KAREN P. HEWITT
United States Attorney
TIMOTHY F. SALEL
Assistant U.S. Attorney
California State Bar No. 163597
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-6074
Facsimile No.: (619) 557-3445
E-Mail: timothy.salel@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE SANCHEZ JIMENEZ, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil Case No. 07CV2061-DMS <br> Related Criminal Case No. 05CR1373-DMS <br><br> GOVERNMENT'S RESPONSE AND OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255 |

COMES NOW the respondent, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Timothy F. Salel, Assistant United States Attorney, in response and opposition to the Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 filed by JOSE SANCHEZ-JIMENEZ ("Petitioner").[1]

Petitioner moves this Court to reduce his sentence because (1) he allegedly accepted a final deportation order; (2) he cannot be housed in a minimum security facility or a community correctional center due to his status as an illegal alien; (3) 8 U.S.C. § 1326 is malum prohibitum; and (4) Rule 11 of the Federal Rules of Criminal Procedure was somehow violated. As discussed further, petitioner's motion should be denied because he knowingly and intelligently waived his right to appeal and to collaterally attack his judgment and sentence. Furthermore, the motion is meritless and the grounds proffered do not warrant any modification in the sentence imposed.

---

[1] Petitioner's Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 appears to be a composite of two separate motions: (1) Motion For Time Reduction By Inmate In Federal Custody Under Title (28 U.S.C. § 2255), and (2) Motion For Speed Decision To Motion Reduction Sentence For The Judgement Imposed By Court. Respondent will address both motions herein.

# I

# STATEMENT OF FACTS

### A. The Instant Offense - Deported Alien Found in the United States

On May 23, 2005, Petitioner was arrested because he was drinking beer in the rear parking lot behind the La Cocina De Jose Restaurant in San Diego. A San Diego Police Officer confiscated the beer can and a small amount of marijuana from Petitioner. Another officer conducted a records check on Petitioner and determined that he had previously been deported after sustaining an aggravated felony conviction. A United States Border Patrol agent responded to the police station and transported Petitioner to the Border Patrol Station in Imperial Beach for further inquiry into Petitioner's immigration status. Once back at the Imperial Beach Border Patrol Station, Petitioner's fingerprints and photograph were submitted into the computer systems to determine Petitioner's identity and corresponding immigration status and prior criminal history. The records revealed that Petitioner was a citizen and national of Mexico without any immigration documents and who had been previously convicted of several felonies and was previously deported to Mexico.

On May 23, 2005, Petitioner was advised of his Miranda rights in the English language. Petitioner stated that he understood his Miranda rights and stated that he was willing to answer the agent's questions without an attorney present. Petitioner stated that he was citizen and national of Mexico without valid immigration documents to enter or to remain in the United States legally. Petitioner stated that he was born in Michocan, Mexico on December 7, 1966. Petitioner stated that he had possessed immigration documents in the past, but these documents were taken away from him when he was deported. Petitioner stated that he entered the United States illegally following his deportation. Petitioner admitted that he had not applied for permission to re-enter the United States following his deportation.

### B. Immigration History

On December 7, 1966, Petitioner was born in Michocan, Mexico. In 1979, Petitioner came to the United States along with his mother, brothers, and sister. In 1993, Petitioner's immigration status was changed to lawful permanent resident alien.

1    Petitioner has been ordered deported and removed from the United States three times. In
2    1997, Petitioner was removed pursuant to an Order of an Immigration Judge who found that
3    Petitioner was deportable under Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act
4    because he was convicted of two crimes involving moral turpitude not arising out of a single scheme
5    of criminal conduct (a 1994 conviction for petty theft with a prior in violation of Cal. Penal Code
6    §§ 484 and 666 and a 1995 conviction for assault with a deadly weapon in violation of Cal. Penal
7    Code § 245). In 1999 and 2001, Petitioner was removed pursuant to reinstatements of the
8    Immigration Judge's order.

**C.    Criminal History**

Petitioner has an extensive, aggravated, and violent criminal history that spans two decades. Petitioner has been arrested at least 12 times, violated the terms of his probation numerous times, and was convicted of the following eight crimes:

| **Date** | **Crime** | **Disposition** |
|---|---|---|
| 12/11/85 | Battery | 30 days custody and 3 years probation |
| 02/05/92 | Infliction of corporal injury on spouse/cohabitant | 30 days custody and 3 years probation |
| 02/05/92 | Theft of personal property/petty theft | 1 day custody and 3 years probation |
| 11/10/93 | Battery on noncohabitant/former spouse<br>- Probation reinstated (08/04/95) | 3 years probation and work program<br>- 30 days custody |
| 10/06/94 | Exhibit deadly weapon (not firearm) | 60 days custody and 3 years probation |
| 10/19/94 | Petty theft w/prior<br>- Probation revoked (08/24/95) | 120 days custody and 3 years probation<br>- 2 years custody |
| 08/28/95 | Assault w/deadly weapon (GBI likely) | 4 years custody |
| 02/11/03 | Driving on a suspended license | 10 days in custody |

**D.    Trial, Sentencing Hearing, and Agreement Regarding Waiver of Appeal and Collateral Attack**

On March 13, 2006, Petitioner was convicted of 8 U.S.C. § 1326 after a one-day trial. The sentencing hearing was initially scheduled for June 2, 2006 but was subsequently continued several times to allow newly-appointed defense counsel, Thomas S. Sims, sufficient time to review the case and file any appropriate post-trial motions and sentencing documents.

On May 11, 2007, the Court held a sentencing hearing and addressed all issues raised by the parties.[2] At that time, an Agreement Regarding Waiver of Appeal and Collateral Attack ("Agreement") was filed. The Agreement, in pertinent part, provides:

> In exchange for the Government's recommendations in this Agreement Regarding Waiver of Appeal and Collateral Attack ("Agreement"), [Petitioner] waives, to the full extent of the law, any right to appeal or to collaterally attack his conviction and sentence, unless the Court imposes a custodial sentence greater than 96 months, the high end of the guideline range recommended by the Government.

The Agreement also provides that the Government would recommend that the Court grant a two-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(a), and impose a sentence at the low end of the resulting guideline range, 77 months in custody. Petitioner agreed that (1) he had a full opportunity to discuss all the facts and circumstances of this case with counsel, and has a clear understanding of the consequences of entering into the Agreement, (2) no one has made any promises or offered any rewards in return for entering into the Agreement (other than those contained in this Agreement), and (3) no one had threatened him or his family to induce him to enter into the Agreement.

After addressing the parties' arguments regarding the appropriate range under the United States Sentencing Guidelines, the appropriate factors under 18 U.S.C. § 3553(a), as well as the Agreement, the Court imposed a sentence of 77 months in custody. Neither Petitioner, nor Petitioner's prior defense counsel or anyone else on Petitioner's behalf, moved the Court to reconsider the 77-month sentence imposed.

---

[2] In his sentencing memorandum and other documents filed with the Court, Petitioner's defense counsel and Petitioner - who filed documents without consulting with defense counsel - raised similar arguments that Petitioner again raises in the 2255 motion. In particular, Petitioner argued that the Court should grant a downward departure because he would not be eligible for a minimum security designation, or alternative confinement options such as home confinement, due to his status as a deportable alien. Petitioner also contended that his aggravated felony convictions (two ADW convictions) were "not serious." These arguments were addressed by the Government in its Sentencing Memorandum and were considered and rejected by this Court.

# II

# DISCUSSION

### A. PETITIONER WAIVED HIS RIGHT TO APPEAL OR COLLATERALLY ATTACK HIS SENTENCE

There is no constitutional right to appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). The Ninth Circuit has upheld the validity of waivers of appeal and has determined that "public policy strongly supports plea agreements, such as the one made by [defendant]." United States v. Navarro-Botello, 912 F.2d 318, 321 (9th Cir. 1990). Negotiating such waivers is a proper and sensible part of the plea bargaining process and helps ensure the important benefit of finality. Id. at 322. Courts will generally enforce a defendant's waiver of his right to appeal if (1) the waiver is knowingly and voluntarily made, and (2) the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal. See United States v. Joyce, 357 F.3d 921, 922 (9th Cir. 2004); United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000).

Petitioner has knowingly and voluntarily waived his right to appeal or collaterally attack his conviction and sentence. The broad and unambiguous language in the waiver encompasses Petitioner's right to appeal or collaterally attack the sentence on the grounds listed in Petitioner's motion.

#### 1. Waiver Was Knowing and Voluntary

An express waiver of the right to appeal is valid if knowingly and voluntarily made. See United States v. DeSantiago-Martinez, 38 F.3d 394, 395 (9th Cir. 1992). A reviewing court looks to the circumstances that surround the signing and entry of the agreement to determine whether a defendant agreed to its terms knowingly and voluntarily. See United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 1996). It is also relevant to determine whether the court informed the defendant of his appellate rights and verified his intent to forfeit them. See United States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000); Navarro-Botello, 912 F.2d at 321.

Petitioner entered into a written Agreement with the advice and consent of his defense attorney. In the Agreement, Petitioner represented that he fully understood the terms of the Agreement, that he knowingly, voluntarily, and intelligently entered into the Agreement, and that

1  he was satisfied with the representation of his defense counsel. The Agreement specifically
2  provides for a waiver of collateral attack of Petitioner's conviction and sentence "to the full extent
3  of the law, any right to appeal or to collaterally attack his conviction and sentence, unless the Court
4  impose[d] a custodial sentence greater than 96 months, the high end of the guideline range
5  recommended by the Government." This condition precedent was satisfied when the Court imposed
6  a sentence at the low-end of the guideline range – 77 months in custody. The Court should now
7  enforce Petitioner's waiver of appeal and collateral attack and dismiss his motion.

### 2. Clear Language of the Agreement Supports Finding a Waiver

An agreement that includes a waiver of appeal and collateral attack is contractual in nature and is measured by contractual standards. See United States v. Clark, 218 F.3d 1092, 1095 (9th Cir. 2000). This Court should look to what the parties reasonably understood the terms of the Agreement were in deciding whether Petitioner waived his right to bring this petition. See United States v. Torres, 999 F.2d 376, 378 (9th Cir. 1991). Contract principles are applied to determine whether the Agreement, by its terms, waives the right to collateral attack or appeal. See Nunez, 223 F.3d at 958. In applying those principles, "the terms of the agreement, if disputed, are to be determined by objective standards." United States v. Gerace, 997 F.2d 1293, 1294 (9th Cir. 1993) (citations omitted). The terms of an agreement can be objectively determined by reference to the plain language. See United States v. Goroza, 941 F.2d 905, 909-10 (9th Cir. 1991).

The Ninth Circuit has emphasized that a defendant may knowingly and voluntarily give up rights to appeal or collaterally attack alleged errors of which he is not aware and have yet to occur when he does so in exchange for a set maximum sentence. See Navarro-Botello, 912 F.2d at 319-20 (defendant waived his right to appeal if sentence imposed was within the sentencing guidelines as calculated by the parties in the plea agreement); Anglin, 215 F.3d at 1065 (waiver of appeal of sentence did not apply if sentence exceeded the guidelines); United States v. Nguyen, 235 F.3d 1179, 1182 (9th Cir. 2000) (defendant waived his right to appeal provided he was sentenced within the guideline range); United States v. Bollinger, 940 F.2d 478-479 (9th Cir. 1991) (defendant waived his right to appeal sentence that did not exceed 36 months); United States v. Martinez, 143 F.3d 1266, 1270 (9th Cir. 1998) (defendant waived right to appeal sentence of 15 years or less).

Based on the clear language of the Agreement cited above, the Government and Petitioner both contemplated that Petitioner would waive his right to appeal or file any collateral attack on his conviction or sentence if this Court did not impose a custodial sentence higher than the high end of the applicable guideline range for the adjusted offense level referenced in the Plea Agreement. Any contrary assertion would render the waiver meaningless. See United States v. Schuman, 127 F.3d 815, 817 (9th Cir. 1997) (rejecting argument that waiver did not extend to appeals of incorrect sentencing guidelines application for it would render waiver meaningless). This Court imposed a sentence of 77 months in custody, that is, lower than the high end of the guideline range recommended by the Government at sentencing. Since Petitioner received the "bargained-for quid pro quo" of the Agreement, he effectively waived all rights to appeal or collaterally attack his conviction and sentence. See United States v. Escamilla, 975 F.2d 568, 571 (9th Cir. 1992).

Moreover, a waiver of appeal and collateral attack cannot be circumvented by filing a section 2255 motion. See United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1992) (a knowing and voluntary wavier of a right to appeal is valid and applies to motions under 28 U.S.C. § 2255); United States v. Magueflor, 2007 U.S. App. LEXIS 2969, Case No. 05-56783 (9th Cir. 2007) ("A defendant may waive his statutory right to file a 28 U.S.C. 2255 motion challenging the length of his sentence"). Petitioner validly waived his right to appeal or collaterally attack the conviction and sentence imposed in Criminal Case No. 04CR1739-H. Accordingly, his petition should be summarily dismissed.

### D.    NO FURTHER DOWNWARD DEPARTURES ARE WARRANTED

The district court may dismiss a 2255 motion and deny a hearing if the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (citations omitted). As explained further, Petitioner's allegations in his 2255 motion were either rejected by this Court at the sentencing hearing as meritless, or were patently frivolous.

### 1. **Acceptance of Final Deportation Order**

Petitioner states that "[u]nder the Attorney General Memorandum dated April 28, 1995, the United States Attorney can offer up to 2 points level [sic] if defendant accepts a final deportation order."[3] Assumably, Petitioner contends that the Court erred in not granting a two-level downward departure because he accepted a final deportation order. This contention is meritless for at least two reasons.

First, as a threshold matter, Petitioner did not establish (or even clearly allege) that he has ever accepted a final deportation order. See Jara-Candia v. United States, 2006 U.S. Dist. LEXIS, Case Nos. CV06-165-TUC-FRZ, CR-05-667-TUC-FRZ (D. Ariz. 2006) (Petitioner-alien's 2255 motion was dismissed because, among other reasons, petitioner "presented no evidence that he agreed to accept a final deportation order."). Given that Petitioner filed a motion under 8 U.S.C. § 1326(d) to dismiss the Indictment due to the alleged illegality of his prior deportation, the Government would be surprised if Petitioner accepted a final deportation order.

Second, assuming Petitioner had accepted a final deportation order prior to the date of sentencing, no downward departure would have been warranted. Petitioner has no legal right to reside in the United States and his removal or deportation is a civil penalty rather than criminal punishment. See Kincade v. United States, 559 F.2d 906, 909 (3d Cir. 1977) (holding that deportation is not directly part of the sentence for the criminal offense). As such, the collateral civil consequences of Petitioner's eventual deportation after serving a term of incarceration does not provide a compelling basis to grant a downward departure. See United States v. Vasquez, 279 F.3d 77, 82 (1st Cir. 2002) ("a district court may not depart downward on the basis that deportable status ostensibly carries with it certain adverse collateral penal consequences" and "[i]f the law were otherwise, then every defendant in an illegal reentry case automatically would qualify for such a

---

[3] On April 28, 1995, Attorney General Janet Reno issued a memorandum allowing federal prosecutors to recommend a one-levl or two-level downward departure in return for an alien's concession of deportability and agreement to accept a final order of deportation. "The program's purpose was to save the Immigration and Naturalization Service ("INS") from spending time and money to detain illegal aliens pending their deportation proceedings." See United States v. Gonzales-Guzman, 2007 U.S. Dist. LEXIS 77914, Case Nos. CR-04-154-EFS and CV-07-133-EFS (E.D. Wash. 2007). However, over the next several years, the deportation process was streamlined and the INS was authorized to remove aliens based on reinstatements of deportation orders. Id.

1  departure, thus emptying the 'heartland' concept of its essential meaning"). Furthermore, given the
2  streamlined removal procedures such as reinstatements, the policies that justify any downward
3  departure have limited application. See Gonzales-Guzman, 2007 U.S. Dist. LEXIS 77914.

### 2. Status as an Illegal Alien

Once again, Petitioner claims that his status as an illegal alien is a mitigating factor that the Court should have considered for sentencing. Petitioner's status as a removable alien does not somehow bring his case "out of the heartland" of the numerous cases involving removable aliens that are considered by this Court. See United States v. Davoudi, 172 F.3d 1130, 1133-34 (9th Cir. 1999) (District Court properly exercised its discretion not to depart downward due to defendant's status as a deportable alien); United States v. Gutierrez-Cervantez, 132 F.3d 460, 462 (9th Cir. 1997) (refusing to review district court's rejection of departure because alien would allegedly suffer "greater punishment" in the Federal Bureau of Prisons); United States v. Martinez-Villegas, 993 F. Supp. 766, 781 (C.D. Cal. 1998) (denying downward departure based on deportable status and noting that "the Ninth Circuit has shown a reluctance to allow deportability status as a basis for downward departure."). Courts have rejected a defendant's status as a deportable alien as a basis for a downward departure where – like this case – alien status is an element of the offense. See United States v. Martinez-Ramos, 184 F.3d 1055 (9th Cir. 1999) (holding that status as a deportable alien is not a basis for departure if it is an element of the offense); United States v. Vasquez, 279 F.3d 77 (1st Cir. 2002) (holding that adverse consequences faced by a deportable alien is no basis for departure from illegal reentry guidelines).

Moreover, in light of "the sheer number of deportable aliens sentenced in federal court," this case falls squarely within the heartland of other cases involving alien defendants who will lose their right to live in the United States due to their conviction for an aggravated felony. See Lizarraga-Lopez v. United States, 89 F. Supp. 2d 1166, 1170 (S.D. Cal. 2000) (defendant, who was convicted of conspiracy to distribute cocaine was not entitled to a downward departure pursuant to 18 U.S.C. § 3624(c) based on his status as a deportable alien). In Lizarraga-Lopez, 89 F. Supp. 2d at 1170, Chief Judge Gonzalez held that "the United States has no policy interest whatsoever in facilitating the re-introduction of non-citizen convicts into foreign communities" and, consequently, the defendant's "status as deportable alien was squarely within the 'heartland' of the Sentencing

Guidelines." See also United States v. Meza-Urtado, 351 F.3d 301, 305 (7th Cir. 2003) (the end-of-sentence confinement conditions that are only available to United States Citizens (such as living in halfway house) are designed to help "reintegrate" citizen-defendants back into American society and this reintegration policy does not exist for non-citizen defendants who will automatically lose their right to live within the United States); United States v. Soto, 976 F. Supp. 1367, 1368 (D. Or. 1997) (declining to downward depart under 18 U.S.C. § 3624(c) on grounds that defendant's status as deportable alien rendered his confinement in a halfway house or home "not practicable"); McLean v. Crabtree, 173 F.3d 1176 (9th Cir. 1999) (holding that the regulations that deny credit to deportable aliens who complete drug treatment programs does not violate equal protection); Jara-Candia, 2006 U.S. Dist. LEXIS (denying equal protection argument for alien petitioner).

### 3. 8 U.S.C. § 1326 is Malum Prohibitum

Petitioner contends that the Court should have departed downwards because 8 U.S.C. § 1326 is malum prohibitum. While Petitioner is technically correct that the crime is based his illegal status in the United States subsequent to his prior deportation, the penalties are serious and the guideline range is high because Petitioner has an extensive criminal record and he had been removed subsequent to the commission of two aggravated violent felonies. See 8 U.S.C. § 1326(b)(2) (20 year statutory maximum sentence for aliens whose removal was subsequent to the commission of an aggravated felony); USSG § 2L1.2(b)(1)(A)(ii) (16-level enhancement if the defendant was deported subsequent to the commission of a crime of violence). Petitioner's aggravated and extensive criminal history justifies the sentence imposed in this case. In 1994, Petitioner tried to stab a security guard holding a can of mace with a knife. See Presentence Report ("PSR") at p. 7. In 1995, Petitioner slashed a man's neck with a serrated knife and the cut required 24 stitches. See PSR at 8. Petitioner's convictions for assault with a deadly weapon under Cal. Penal Code § 245(a)(1) is categorically a "crime of violence" because the "full range of conduct" proscribed by the statute "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." USSG § 2L1.2, cmt. n.1(B)(ii)(I). These two ADW convictions were certainly "serious" aggravated felonies and justified the 16-level enhancement under USSG § 2L1.2(b)(1)(A)(ii).

### 4. Rule 11 of the Federal Rules of Criminal Procedure

Petitioner cites to Rule 11 of the Federal Rules of Criminal Procedure in support of his argument that he did not clearly understand the risk on accepting culpability. Rule 11 governs pleas and plea agreement procedure and has no application to this case.

## III

## CONCLUSION

Based on the foregoing, Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 should be dismissed with prejudice.

DATED: January 3, 2008              Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/S/ TIMOTHY F. SALEL*
TIMOTHY F. SALEL
Assistant U.S. Attorney

|   |   |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF CALIFORNIA |

| | | |
|---|---|---|
| JOSE SANCHEZ JIMENEZ, | ) | Civil Case No. 07CV2061-DMS |
| | ) | Related Criminal Case No. 05CR1373-DMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Timothy F. Salel, am a citizen of the United States over the age of eighteen years and a resident of San Diego County, CA; my business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893; I am not a party to the above-entitled action; and

I deposited in the United States mail at San Diego, California, in an envelope bearing the requisite postage, a copy of GOVERNMENT'S RESPONSE AND OPPOSITION TO PETITIONER'S MOTION TO MODIFY AND CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 addressed to Petitioner at the following address:

> Jose Sanchez Jimenez  93767-198
> California City Correctional Center
> P.O. Box 3001-0001
> California City, CA 93504

I have also e-mailed a copy of the GOVERNMENT'S RESPONSE AND OPPOSITION TO PETITIONER'S MOTION TO MODIFY AND CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 to defense counsel Thomas S. Sims at tsims1@san.rr.com.

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: January 3, 2008            */S/ TIMOTHY F. SALEL*
                                  TIMOTHY F. SALEL